Policy Number
11GPP2056800

COMMON POLICY DECLARATIONS

# ARCH INSURANCE COMPANY

Named Insured    TISHMAN CONSTRUCTION

Effective Date: 09-09-05
12:01 A.M., Standard Time

Agent Name    MARSH USA, INC

Agent No.    00357

| Item 1. | Named Insured and Mailing Address | Agent Name and Address |
|---|---|---|
| | TISHMAN CONSTRUCTION CORPORATION OF NEW YORK<br>666 FIFTH AVENUE<br>NEW YORK NY 10103-0256 | MARSH USA, INC<br>1166 AVENUE OF THE AMERICAS<br>40TH FLOOR<br>NEW YORK NY 10036<br><br>Agent No. 00357 |
| Item 2. | Policy Period | From: 09-09-2005    To: 03-09-2007 |
| | at 12:01 A.M., Standard Time at your mailing address shown above. | |
| Item 3. | Business Description: GENERAL CONTRACTOR<br>Form of Business: CORPORATION | |
| Item 4. | In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. | |

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Property Coverage Part | NOT COVERED |
| Commercial General Liability Coverage Part | $ |
| Commercial Crime Coverage Part | NOT COVERED |
| Commercial Inland Marine Coverage Part | NOT COVERED |
| Commercial Auto (Business or Truckers) Coverage Part | NOT COVERED |
| Commercial Garage Coverage Part | NOT COVERED |
| | |
| Total Policy Premium | $ |

Item 5.    Forms and Endorsements

Forms(s) and Endorsement(s) made a part of this policy at time of issue:

See Schedule of Forms and Endorsements

Countersigned:
Date: 12-08-05    By: _____
Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

FAIC-SKLBUS-CPD (6/01)

PRODUCER COPY

# ARCH INSURANCE COMPANY

3100 BROADWAY
KANSAS CITY, MISSOURI 64111-2479

Incorporated December 15, 1971

*[signature]*                *[signature]*

President                    Secretary

Policy Number
11GPP2056800

SCHEDULE OF FORMS AND ENDORSEMENTS

# ARCH INSURANCE COMPANY

Named Insured   TISHMAN CONSTRUCTION

Effective Date: 09-09-05
12:01 A.M., Standard Time

Agent Name   MARSH USA, INC

Agent No.   00357

COMMON POLICY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| 00 ML0020 00 | 11-03 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT |
| 00 ML0021 00 | 11-03 | UNINTENTIONAL ERRORS & OMISSIONS ENDT |
| IL 09 85 | 01-03 | DISCLOSURE PURSUANT/TERROR INS ACT-2002 |
| FAIC-SKLBUS-CPD | 06-01 | COMMON POLICY DECLARATIONS |
| FAIC-SKLBUS-FE | 06-01 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| FAIC-SKLBUS-SL | 06-01 | SCHEDULE OF LOCATIONS |
| INSTALL-FORM | 01-02 | INSTALLMENT SCHEDULE |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 23 | 04-98 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 01 85 | 04-98 | NEW YORK CHANGES-CALCULATION OF PREMIUM |
| IL 02 68 | 02-05 | NEW YORK CHANGES-CANC & NONRENL |
| 00 MLT0027 00 | 01-05 | TERRORISM COVERAGE DISCLOSURE NOTICE |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| FAIC-SKLBUS-CGLDEC | 06-01 | COMM GENERAL LIABILITY COVERAGE SUPP DEC |
| FAIC-SKLBUS-GLE | 06-01 | NAMED INSURED ENDORSEMENT |
| FAIC-SKLBUS-GLE | 06-01 | ASSIGNMENT CONSENT ENDORSEMENT |
| FAIC-SKLBUS-GLE | 06-01 | ADDITIONAL DEFINITIONS ENDORSEMENT |
| FAIC-SKLBUS-GLE | 06-01 | CANCELLATION PROVISION ENDORSEMENT |
| FAIC-SKLBUS-SCGL | 06-01 | COMM GENERAL LIABILITY COVERAGE SCHEDULE |
| CG 00 01 | 10-01 | COMMERCIAL GENERAL LIABILITY COV FORM |
| 00 GL0045 00 | 12-03 | GENERAL LIABILITY ASBESTOS EXCLUSION |
| 00 CGL0031 33 | 04-03 | DED LIAB COV (ALAE W/IN DED PAID BY YOU) |
| 00 CGL0035 33 | 12-03 | FELLOW EMPLOYEE ENDORSEMENT |
| 00 CGL0042 00 | 09-03 | NON-OWNED WATERCRAFT ENDORSEMENT |
| 00 ML0022 00 | 11-03 | ADDL INSURED - AUTO STATUS CONST-DESIGN |
| CG 01 04 | 12-01 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 | 09-99 | NY CHANGES-COMM GEN LIAB COV FORM |
| CG 00 62 | 12-02 | WAR LIABILITY EXCLUSION |
| CG 00 67 | 03-05 | EXCL-VIOL OF STATS THAT GOVERN EMAIL FAX |
| CG 21 44 | 07-98 | LIMIT OF COV TO DESIGNATED PREM OR PROJ |
| CG 21 47 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 53 | 01-96 | EXCL-DESIGNATED ONGOING OPERATIONS |
| CG 21 65 | 09-99 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 70 | 11-02 | CAP LOSSES FROM CERTIF ACTS OF TERRORISM |
| CG 22 74 | 10-01 | LIMITED CONTR LIABILITY COV FOR PERS/ADV |
| CG 22 79 | 07-98 | EXCL-CONTRACTORS-PROF LIAB |
| CG 24 04 | 10-93 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 26 21 | 10-91 | NY CHANGES - TRANSFER OF DUTIES |
| 00 ML0207 00 | 10-03 | PRODUCTS-COMPLETED OPS HAZARD EXTENSION |

FAIC-SKLBUS-FE (6/01)

Policy Number
11GPP2056800

SCHEDULE OF LOCATIONS

# ARCH INSURANCE COMPANY

Named Insured  TISHMAN CONSTRUCTION

Effective Date: 09-09-05
12:01 A.M., Standard Time

Agent Name  MARSH USA, INC

Agent No.  00357

| Loc. No. | Bldg. No. | Designated Locations (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 001 | 001 | 810 CENTRAL AVENUE, YONKERS, NY 10704 | |

FAIC-SKLBUS-SL (6/01)

Policy Number
11GPP2056800

INSTALLMENT SCHEDULE

# ARCH INSURANCE COMPANY

Named Insured   TISHMAN CONSTRUCTION

Effective Date: 09-09-05
12:01 A.M., Standard Time

Agent Name   MARSH USA, INC

Agent No.   00357

FOR INSTALLMENTS, PLEASE REFER TO THE PREMIUM INVOICES WHICH ARE MAILED SEPARATELY.

| DUE | PREMIUM | SURCHARGE | REVISED INSTALLMENT TOTAL |
|---|---|---|---|

Failure to pay the Installment Premium by the Date Due shown shall constitute non-payment of premium for which we may cancel this policy.

**INSTALL-FORM (01/02)**

PRODUCER COPY

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. **Cancellation**
   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
      a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      b. 30 days before the effective date of cancellation if we cancel for any other reason.
   3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
   4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
   5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
   6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **Changes**
   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **Examination Of Your Books And Records**
   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **Inspections And Surveys**
   1. We have the right to:
      a. Make inspections and surveys at any time;
      b. Give you reports on the conditions we find; and
      c. Recommend changes.
   2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
      a. Are safe or healthful; or
      b. Comply with laws, regulations, codes or standards.
   3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
   4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. **Premiums**
   The first Named Insured shown in the Declarations:
   1. Is responsible for the payment of all premiums; and
   2. Will be the payee for any return premiums we pay.

F. **Transfer Of Your Rights And Duties Under This Policy**
   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

PRODUCER COPY

INTERLINE
IL 00 23 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

IL 00 23 04 98                Copyright, Insurance Services Office, Inc., 1997                Page 1 of 2  ☐

PRODUCER COPY

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**INTERLINE**
**IL 01 85 04 98**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES - CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

```
BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK
```

A. For policies with fixed terms in excess of one year, or policies with no stated expiration date, except as provided in paragraph B., the following applies:

The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal or continuation of this policy, we will compute the premium in accordance with our rates and rules then in effect.

B. For policies with fixed terms in excess of one year, where premium is computed and paid annually, the following applies:

1. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each anniversary, for the entire term of the policy, unless the specific reasons described in paragraphs 2. or 3. apply.

2. The premium will be computed based on the rates and rules in effect on the anniversary date of the policy only when, subsequent to the inception of the current policy period, one or more of the following occurs:

   a. After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   b. A material physical change in the property insured, occurring after issuance or last anniversary renewal date of the policy, causes the property to become uninsurable in accordance with underwriting standards in effect at the time the policy was issued or last renewed; or

   c. A material change in the nature or extent of the risk, occurring after issuance or last anniversary renewal date of the policy, which causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

3. If, subsequent to the inception of the current policy period, the Limit of Insurance is increased, or Additional Coverages or Causes of Loss are insured, the rate and rules in effect at the time of the change will be applied to calculate the premium and will continue to apply to the change at subsequent anniversary dates.

IL 02 68 02 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

```
BOILER AND MACHINERY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
```

A. Paragraphs **1.**, **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Of Policies In Effect**

   a. **60 Days Or Less**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1) 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph A.2.a.(2) below.

   (2) 15 days before the effective date of cancellation if we cancel for any of the following reasons:

   (a) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

   (b) Conviction of a crime arising out of acts increasing the hazard insured against;

   (c) Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

   (d) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   (e) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

   (f) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

(g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

b. **For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph A.2.a.(2) above, provided:

(1) We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

(2) If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the **Cancellation** Common Policy Condition:

7. If one of the reasons for cancellation in Paragraphs **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

C. The following Conditions are added:

1. **Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

2. **Conditional Renewal**

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

3. **Notices Of Nonrenewal And Conditional Renewal**

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1) The expiration date; or

(2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d. If we violate any of the provisions of Paragraphs **C.3.a.**, **b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

   (1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

   (2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

   (1) Upon expiration of the 60 day period; or

   (2) Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2)**, as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the Commercial Property Coverage Part or the Farm Coverage Part is made a part of this policy:

1. Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

   a. The policy is issued or issued for delivery in New York State covering property located in this state; and

   b. The policy insures:

      (1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

      (2) For loss of or damage to personal property other than farm personal property or business property; or

      (3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

   c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

2. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

   2. **Procedure And Reasons For Cancellation**

      a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

         (1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

         (2) 30 days before the effective date of cancellation if we cancel for any other reason.

      b. But if this policy:

         (1) Has been in effect for more than 60 days; or

         (2) Is a renewal of a policy we issued:

         we may cancel this policy only for one or more of the following reasons:

         (1) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

         (2) Conviction of a crime arising out of acts increasing the risk of loss;

         (3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

         (4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

(5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

(a) Issued the policy; or

(b) Last voluntarily renewed the policy;

(6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

(7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

a. **Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

(1) The policy limits be changed; or

(2) Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

b. **Nonrenewal**

If, as allowed by the laws of New York State, we:

(1) Do not renew this policy; or

(2) Condition policy renewal upon:

(a) Change of limits; or

(b) Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

(a) At least 45 days; but

(b) Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

E. The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions and the Commercial Property Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

2. Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F. The following applies to the Commercial Property Coverage Part and the Farm Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

f. **Cancellation**

(1) If we cancel this policy, we will give written notice to the mortgageholder at least:

(a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(2) If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

(a) The effective date of cancellation of the insured's coverage; or

(b) 10 days after we give notice to the mortgageholder.

g. **Nonrenewal**

(1) If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

(2) If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

(a) The expiration date of the policy; or

(b) 10 days after we give notice to the mortgageholder.

G. The following provisions apply when the following are made a part of this policy:
   Commercial General Liability Coverage Part
   Farm Liability Coverage Form
   Liquor Liability Coverage Part
   Products/Completed Operations Liability Coverage Part

1. The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

2. The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

# TERRORISM COVERAGE DISCLOSURE NOTICE

## TERRORISM COVERAGE PROVIDED UNDER THIS POLICY

The Terrorism Risk Insurance Act of 2002 established a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

In accordance with the Terrorism Risk Insurance Act of 2002, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act. Your decision is needed on this question: do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium? You may accept or reject this offer.

If your policy provides commercial property coverage, in certain states, statutes or regulations may require coverage for fire following an act of terrorism. In those states, if "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to Legal Liability coverage forms or Leasehold Interest coverage forms.

**Your premium will include the additional premium for terrorism as stated in the section of this Notice titled DISCLOSURE OF PREMIUM.**

## DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. **The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.**

## DISCLOSURE OF PREMIUM

Your premium for terrorism coverage is: $
(This charge/amount is applied to obtain the final premium.)

**You may choose to reject the offer by signing the statement below and returning it to us. Your policy will be changed to exclude the described coverage. If you chose to accept this offer, this form does not have to be returned.**

### REJECTION STATEMENT

> I hereby decline to purchase coverage for certified acts of terrorism. I understand that an exclusion of certain terrorism losses will be made part of this policy.

_____  
Policyholder/Legal Representative/Applicant's Signature

Tishman Construction Corporation of New York  
Named Insured

_____  
Print Name of Policyholder/Legal Representative /Applicant

Arch Insurance Company  
Insurance Company

Date: _____

Policy Number: 11GPP2056800

Policy Number
**11GPP2056800**

COMMERCIAL GENERAL LIABILITY COVERAGE PART
SUPPLEMENTAL DECLARATIONS

# ARCH INSURANCE COMPANY

Named Insured   TISHMAN CONSTRUCTION              Effective Date:  09-09-05
                                                  12:01 A.M., Standard Time
Agent Name   MARSH USA, INC                       Agent No.   00357

| Item 1. Business Description: GENERAL CONTRACTOR | | |
|---|---|---|
| **Item 2. Limits of Insurance** | | |
| Coverage | Limit of Liability | |
| Aggregate Limits of Liability | $ 4,000,000 | Products/Completed Operations Aggregate |
| | $ 4,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 2,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $ 1,000,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 2,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | 10,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| **Item 3. Retroactive Date** | | |
| Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here: _____ | | |
| (Enter Date or "None" if no Retroactive Date applies) | | |
| **Item 4. Form of Business and Location of Premises** | | |
| Forms of Business: CORPORATION<br>Location of All Premises You Own, Rent or Occupy:<br>   See Schedule of Locations | | |
| **Item 5. Forms and Endorsements** | | |
| Form(s) and Endorsement(s) made a part of this policy at time of issue:<br>   See Schedule of Forms and Endorsements | | |
| **Item 6. Premiums** | | |
| Coverage Part Premium: $ | | |
| Other Premium: | | |
| Total Premium: $ | | |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
FAIC-SKLBUS-CGLDEC (6/01)

PRODUCER COPY